IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHRIS MOLLO, | § | |
| Plaintiff, | § § § | |
| v. | § | 1:18-CV-627-RP |
| SAFEGUARD WORLD INTERNATIONAL, LLC, | § § § § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant SafeGuard World International, LLC's ("SafeGuard") Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. 11), along with the parties' responsive briefing, (Dkts. 12, 13). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be denied.

### I. BACKGROUND

SafeGuard provides businesses with payroll and human resources solutions. (Mot. Dismiss, Dkt. 11, at 2–3). Plaintiff Chris Mollo ("Mollo") was a senior regional sales manager for SafeGuard from July 2015 until he resigned in April 2018. (Am. Compl., Dkt. 8, at 2, 4). Mollo was paid partly on commission; he alleges that SafeGuard owes him about $240,000 in unpaid commissions under his commission agreement. (*Id.* at 2–3, 5). Mollo earned commissions according to the terms of SafeGuard's World International GMP Sales Initiative Programs ("SIPs"), which expired and were replaced with a new SIP at the end of each year. (*Id.* at 2). At issue here is Mollo's 2018 SIP, which he attaches to his complaint. (SIP, Dkt. 8-1). Mollo asserts causes of action against SafeGuard for breach of contract, anticipatory breach of contract, and equitable and promissory estoppel. (*Id.* at 7–8). SafeGuard asks the Court to dismiss all of Mollo's claims under Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, Dkt. 11, at 1).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. Breach of Contract and Anticipatory Breach

To prevail on a breach-of-contract claim, Mollo must establish the following elements: "(1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance

or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach." *Viajes Gerpa, S.A. v. Fazeli*, 522 S.W.3d 524, 539 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). SafeGuard contests only the adequacy of Mollo's pleadings regarding the second and third elements. (*See* Mot. Dismiss, Dkt. 11, at 11–13). As discussed below, the Court finds that Mollo has plausibly alleged that he performed his obligations under the 2018 SIP and that SafeGuard breached its obligation to pay him.

To prevail on a claim for anticipatory breach, meanwhile, Mollo must establish the following elements: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). SafeGuard contests only the first element, arguing that there can be no repudiation of an obligation that does not exist. (Mot. Dismiss, Dkt. 11, at 13). Likewise, the Court finds that Mollo has plausibly alleged SafeGuard has repudiated its obligations under the 2018 SIP.

The SIP defines when a commission is earned and when it will be paid in the following clause, labeled "Commission Payment":

> Commission for one-time fees will be considered earned upon the client's full settlement of the invoice of the billable revenue. Commissions earned on such on[e]-time fees will be paid on the next regular pay date . . . .
>
> Commission for annuity revenue will be considered earned as of the go-live date of the billable project. Commissions for such annuity revenue will be paid on the next regular pay date . . . .

(*Id.* at 2).

Later, in a separate section labeled "Termination and Deductions from Final Pay," the SIP qualifies those payment rules. (*Id.* at 6–7). There, the SIP provides that:

> No commissions or other incentives may be earned after 31 December 2018 or following termination of employment, whichever first. Any commission that is earned but not paid prior to termination will be paid on the next regular pay date . . . .
>
> Similarly, any commission for which [the] employee has completed all steps to earn and that subsequently become[s] 'earned' will be paid in line with the above.

3

(*Id.*).

The parties' dispute is this: Mollo thinks he is owed commissions for a set of projects that "went live" after his termination, while SafeGuard believes that it is not obligated to pay commissions that were earned after Mollo's termination. According to Mollo, when he turned in his two-week notice, SafeGuard gave him a spreadsheet "showing commissions that were due or would become due" to Mollo. (Am. Compl., Dkt. 8, at 5). Mollo alleges that these commissions were, "for the most part," projects for which he "had completed all steps required from him to earn the commissions" and that "[m]any of the GPM [c]ontracts were simply waiting on the customer, or [SafeGuard], to 'go live.'" (*Id.* at 7).[1] Mollo believes that he is owed commissions for these projects under the clause in his SIP stating that "any commission for which [the] employee has completed all steps to earn and that subsequently become[s] 'earned' will be paid in line with the above" (the "Disputed Clause"). (SIP, Dkt. 8-1, at 7).

SafeGuard, meanwhile, denies that it owes Mollo anything. (Mot. Dismiss, Dkt. 11, at 2). According to Safeguard, "the express terms of the SIP show that contemporaneous employment is an express precondition to 'earning' any commission, and the only commission that may be paid post-termination is that which has already been 'earned.'" (*Id.* at 9). As for the Disputed Clause, SafeGuard believes that the clause "states only that commissions will be paid after they are earned." (Reply Mot. Dismiss, Dkt. 13, at 1). SafeGuard argues that Mollo's position asks the Court to rewrite the contract and render multiple other provisions meaningless. (*Id.* at 10–11). The Court disagrees. In fact, it is SafeGuard's position that would render the Disputed Clause meaningless.

---

[1] Mollo alleges that the commissions he is owed accrued "for the most part" in this way. (Am. Compl., Dkt. 8, at 7). However, despite Mollo's "for the most part" equivocation, he nowhere alleges that he was not paid commissions that were earned prior to termination because either (a) a one-time-payment client settled an invoice or (b) a recurring-payment client's project went live. The plausibility of Mollo's claims therefore rises and falls on whether he has adequately alleged that he is owed commissions that were earned after his termination.

4

"In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *see also Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) ("We presume that the parties to a contract intend every clause to have some effect.") (citing *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 331 (Tex. 1983)). Courts must give contract terms "their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (quoting *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009)). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* (quoting *Tawes*, 340 S.W.3d at 425).

"Whether a contract is ambiguous is a legal question for the court." *Dynegy*, 294 S.W.3d at 168. "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res.*, 939 S.W.2d at 121 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). A contract is not ambiguous simply because the parties disagree over its meaning. *Kachina Pipeline*, 471 S.W.3d at 449. The Court construes an unambiguous contract as a matter of law. *Dynegy*, 294 S.W.3d at 168.

Applying these rules of interpretation, the Court agrees with Mollo that the 2018 SIP unambiguously provides that he should be paid commissions for which he has completed all the steps to earn and that later become earned, even after termination. The issue, fundamentally, is whether commissions "that subsequently become earned" are commissions that become earned before or after the employee is terminated. If, as SafeGuard suggests, the Disputed Clause refers only to commissions that subsequently become earned before termination, then the Disputed Clause

5

is superfluous, since the SIP expressly provides that commissions earned before termination will be paid in the immediately preceding paragraph. (SIP, Dkt. 8-1, at 6). The Court must presume that the Disputed Clause has some effect, *Heritage Res.*, 939 S.W.2d at 121, and that is so only if it refers to commissions that become earned after termination.

There is no other reasonable interpretation of the Disputed Clause that would give the clause meaning. (SIP, Dkt. 8-1, at 7). SafeGuard's suggested interpretation—"the [Disputed Clause] states only that commissions will be paid after they are earned"—certainly does not. (Reply Mot. Dismiss, Dkt. 13, at 1). For one thing, SafeGuard's interpretation would again render the clause superfluous, as the SIP's definition of "Commission Payment" already provides that commissions will be paid after being earned. (SIP, Dkt. 8-1, at 2). Second, SafeGuard's interpretation of the Disputed Clause is incongruous with the context in which it appears: it would make little sense to include a global provision for paying commissions after they are earned in a section pertaining only to termination and deductions from final pay. (*Id.* at 7).

SafeGuard's other objections are not persuasive. SafeGuard contends that Mollo's interpretation of the Disputed Clause rewrites the SIP provisions that define when a commission is earned, such that (for example) a commission would be earned not when recurring-payment project "goes live," but instead when the customer executes that project's contract. (Mot. Dismiss, Dkt. 11, at 10). But Mollo's interpretation entails no such rewrite, because the Disputed Clause does not alter when a commission is earned. Instead, it provides for payment of commissions that are *unearned* if both (a) the employee "has completed all steps to earn" the commission and (b) the commission subsequently becomes earned. (SIP, Dkt. 8-1, at 7). Whether Mollo is owed his unpaid commissions because he met either of these conditions—or indeed, what must be done to "complete all steps to earn" a commission—is a separate issue.

6

Accordingly, Mollo has plausibly alleged that SafeGuard has breached and will breach the 2018 SIP, properly interpreted, because he has alleged that SafeGuard (1) has not paid him commissions for which he has completed all the steps to earn and that later became earned, and (2) repudiated its obligation to do so. (Am. Compl., Dkt. 8, at 5). Moreover, Mollo has plausibly alleged his own performance by alleging that there was nothing more for him to do on (at least some) of the projects listed in the SafeGuard spreadsheet other than wait for the customer to "go live." (*Id.* at 5, 7). SafeGuard's motion to dismiss these claims is denied.

**B. Equitable Estoppel**

Mollo alleges that he was misled by SafeGuard's commissions spreadsheet into believing that he would be paid those commissions; he asks that SafeGuard be equitably estopped from contending that no commissions are owed to him. (Am. Compl., Dkt. 8, at 8). "Equitable estoppel is not a cause of action but may be asserted as a defensive plea to bar a defendant from raising a particular defense." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 n.1 (Tex. 2004). SafeGuard only asks the Court to dismiss Mollo's "equitable estoppel" claim if he intends to assert it as an independent cause of action and does not move to strike it if asserted as a defense. (Mot. Dismiss, Dkt. 11, at 15). Mollo does not assert it as an independent cause of action. (Resp. Mot. Dismiss, Dkt. 12, at 11).[2] There is thus no action to take against this portion of Mollo's pleading under Rule 12(b)(6).

---

[2] Mollo labels the section in which he discusses estoppel "Equitable and Promissory Estoppel," but represents in his response to SafeGuard's motion that he "is only pursuing his equitable estoppel defense in this action." (Resp. Mot. Dismiss, Dkt. 12, at 11 n.2).

7

## VI. CONCLUSION

For these reasons, **IT IS ORDERED** that SafeGuard's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. 11), is **DENIED**.

**SIGNED** on February 19, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE